**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FYF-JB, LLC, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:19-cv-02608 |
| | ) | |
| PET FACTORY, INC., | ) | Judge Thomas M. Durkin |
| Defendant. | ) | |

**OPENING BRIEF OF DEFENDANT PET FACTORY, INC.**
**IN SUPPORT OF OPPOSED MOTION TO DISMISS PURSUANT TO**
**FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................................... 1

II. PROCEDURAL POSTURE AND LEGAL STANDARDS ............................................ 2

  A.  This Case Should Be Assessed at the Pleading Stage Through Rule
      12(b)(6). .................................................................................................... 2

  B.  Patent Eligible Subject Matter. .................................................................. 3

III. ARGUMENT ........................................................................................................ 5

  A.  *Mayo / Alice* Step One: The '643 Patent Claims Are Directed to
      Excluded Matter. ........................................................................................ 5

      1.  The Claims Claim Force and Its Direction, a Law of Nature. .................. 5

      2.  The Claims Are Written to Excluded Subject Matter. ............................. 7

  B.  *Mayo / Alice* Step Two: The '643 Patent Claims Fail to Recite an
      Inventive Concept Captured by the Claims. ............................................. 9

      1.  All Additional Claim Limitations Are Conventional. ............................. 10

      2.  The Claims Fail to Provide an Inventive Concept as an Ordered
          Combination. ......................................................................................... 12

  C.  The Claims Are Invalid Under 35 U.S.C. § 112 ¶ 2. ............................... 13

IV. CONCLUSION ................................................................................................... 15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018)...................................................................................3

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
  838 F.3d 1253 (Fed. Cir. 2016)...................................................................................7

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  134 S.Ct. 2347 (2014)......................................................................................... *passim*

*Allen Eng'g Corp. v. Bartell Indus., Inc.*,
  299 F.3d 1336 (Fed. Cir. 2002).................................................................................13

*American Axle & Manufacturing, Inc. v. Neapco Holdings LLC*,
  309 F.Supp.3d 218 (D. Del. 2018)........................................................................11, 12

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
  788 F.3d 1371 (Fed. Cir. 2015).................................................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).....................................................................................................2

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*,
  133 S.Ct. 2107 (2013)..................................................................................................4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).....................................................................................................2

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018).......................................................................4, 5, 9, 12

*Bishop v. Air Line Pilots Ass'n, Int'l*,
  900 F.3d 388 (7th Cir. 2018).......................................................................................2

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (2019)......................................................................................................5

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014).......................................................................3, 9, 10, 11

*Cyberfone Sys., LLC v. CNN Interactive Grp, Inc.*,
  558 Fed. Appx. 988 (Fed. Cir. 2014).................................................................3, 10

*Dealertrack, Inc. v. Huber*,
    582 F.3d 1315 (Fed. Cir. 2012)................................................................................3

*Doherty v. City of Chicago*,
    75 F.3d 318 (7th Cir. 1996) ................................................................................7

*Electric Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)................................................................................12

*Fair-Warning IP, LLC v. Iatric Sys., Inc.*,
    839 F.3d 1089 (Fed. Cir. 2016)................................................................................3

*Gen. Electric Capital Corp. v. Lease Resolution Corp.*,
    128 F.3d 1074 (7th Cir. 1997) ................................................................................7

*Genetic Techs. Ltd. v. Merial L.L.C.*,
    818 F.3d 1369 (Fed. Cir. 2016)................................................................................3

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
    850 F.3d 1332 (Fed. Cir. 2017)................................................................................4, 9

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016)................................................................................9

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015)................................................................................7

*Juxtacomm-Texas Software, LLC v. Axway, Inc.*,
    No. 6:10-cv-0011, 2012 WL 7637197 (E.D. Tex. July 5, 2012) ........................13, 14

*Juxtacomm-Texas Software, LLC v. Tibco Software, Inc.*,
    532 Fed.Appx. 911 (Fed. Cir. 2013)................................................................................13

*Maxon, LLC v. Funai Corp., Inc.*,
    726 Fed. Appx. 797 (Fed. Cir. 2018)................................................................................3

*Mayo Collaborative Servs. v. Prometheus Labs.*,
    132 S. Ct. 1289 (2012)................................................................................*passim*

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    788 F.3d 1359 (Fed. Cir. 2015) (Mayer, J., concurring)................................................2

*Phillips v. Prudential Ins. Co. of Am.*,
    714 F.3d 1017 (7th Cir. 2013) ................................................................................2

*RecogniCorp, LLC v. Nintendo Co.*,
    855 F.3d 1322 (Fed. Cir. 2017)................................................................................3, 5, 9

*SAP Am., Inc. v. InvestPic LLC,*
890 F.3d 1016 (Fed. Cir. 2018)..............................................................................3

*Secured Mail Sols. LLC v. Universal Wilde, Inc.,*
873 F.3d 905 (Fed. Cir. 2017)................................................................................2

*Solomon v. Kimberly-Clark Corp.,*
216 F.3d 1372 (Fed. Cir. 2000)............................................................................13

*Synopsys, Inc. v. Mentor Graphics Corp.,*
839 F.3d 1138 (Fed. Cir. 2016)..............................................................................3

*In re TLI Commc'ns LLC Patent Litig.,*
823 F.3d 607 (Fed. Cir. 2016)....................................................................3, 7, 9, 10

*Trading Techs. Int'l, Inc. v. IBG LLC,*
921 F.3d 1084 (Fed. Cir. 2019)..............................................................................4

*Two-Way Media Ltd. v. Comcast Cable Commc'ns,*
LLC, 874 F.3d 1329 (Fed. Cir. 2017)...................................................................3, 7

*Ultramercial v. Hulu, LLC,*
772 F.3d 709 (Fed. Cir. 2014)............................................................................3, 7

*Voter Verified, Inc. v. Election Sys. & Software LLC,*
887 F.3d 1376 (Fed. Cir. 2018)..............................................................................3

*Williamson v. Citrix Online, LLC,*
792 F.3d 1339 (Fed. Cir. 2015)..............................................................................8

**Statutes**

35 U.S.C. § 101.............................................................................................1, 2, 3, 12

35 U.S.C. § 112...............................................................................................1, 13

**Other Authorities**

Fed.R.Evid. 201(b)................................................................................................7

Federal Rules of Civil Procedure 12(b)(6)........................................................1, 2, 3, 7

## I.    INTRODUCTION

FYF-JB, LLC ("Plaintiff," or "FYF-JB") has filed suit against Pet Factory, Inc. ("Pet Factory") alleging infringement of U.S. Patent 9,681,643 (the "'643 Patent"). Dkt. No. 1. The '643 Patent is the third patent from a common specification.[1] However, the '643 patent claims are distinct from those of the first two patents in that they define the alleged invention in undue breadth by what the tug toy *does*, not by the structure of what it *is*. In doing so the '643 Patent claims are invalid as a matter of law for two reasons. First, the asserted claims are patent ineligible under 35 U.S.C. § 101 by claiming a law of nature or natural phenomenon, namely force and its direction, combined with generic long-known conventional features. *Mayo Collaborative Servs. v. Prometheus Labs.*, 132 S. Ct. 1289 (2012); *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S.Ct. 2347 (2014). Second, all claims of the '643 Patent are invalid under 35 U.S.C. § 112 ¶ 2 (the "regards as his invention" requirement)[2] for undue claim scope irreconcilable and inconsistent with the inventor's patent disclosure of a squeak tug toy requiring "at least two gripping members" to be "pulled simultaneously" to generate its claimed forces and activate a noisemaker. Each issue is a matter of law based on the asserted claims. Each issue is case dispositive. For the reasons set forth in detail herein, Pet Factory respectfully requests that the Court grant its motion to dismiss FYF-JB's Complaint with prejudice under Federal Rules of Civil Procedure 12(b)(6).

---

[1] The asserted U.S. Patent 9,681,643, Dkt.1-1, is attached hereto as Motion Exhibit 1 (with highlighting added). U.S. Patents 8,881,685 and 9,295,232 are, respectively, attached hereto as Motion Exhibit 2 and Motion Exhibit 3. Only the asserted '643 Patent is the subject of the present motion.

[2] Section 4 of the Leahy-Smith America Invents Act (AIA) designated pre-AIA 35 U.S.C. § 112 ¶¶ 1 through 6, as 35 U.S.C. §§ 112(a) through (f), effective for patent applications filed on or after September 16, 2012. Since the '643 Patent claims priority to an application filed March 10, 2010, this brief cites to the pre-AIA version of 35 U.S.C. § 112.

1

## II.    PROCEDURAL POSTURE AND LEGAL STANDARDS

### A.    This Case Should Be Assessed at the Pleading Stage Through Rule 12(b)(6).

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Although factual allegations are taken as true, legal conclusions are given no deference— those matters are left for the court to decide. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). See also, *Bishop v. Air Line Pilots Ass'n, Int'l*, 900 F.3d 388, 397 (7th Cir. 2018). The Federal Circuit has noted that even "[i]n ruling on a 12(b)(6) motion, a court need not accept as true 'allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the claims and the patent specification." *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017). The court must consider the complaint itself, documents attached to or critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013).

"When the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl.*, 550 U.S. at 558. "Addressing 35 U.S.C. § 101 at the outset not only conserves scarce judicial resources and spares litigants the staggering costs associated with discovery and protracted claim construction litigation, it also works to stem the tide of vexatious suits brought by the owners of vague and overbroad [ ] patents." *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1364–65 (Fed. Cir. 2015) (Mayer, J., concurring) (citations omitted).

2

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Alice*, 134 S. Ct. at 2355. "[P]atent eligibility can be determined at the Rule 12(b)(6) stage…when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018). "In considering patent eligibility under § 101, one must focus on the claims." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016) ("The § 101 inquiry must focus on the language of the Asserted Claims themselves."); *Dealertrack, Inc. v. Huber*, 582 F.3d 1315, 1334 (Fed. Cir. 2012). There is no requirement that the district court engage in claim construction before deciding § 101 eligibility." *Ultramercial v. Hulu, LLC*, 772 F.3d 709, 717 (Fed. Cir. 2014) (affirming grant of "pre-answer motion to dismiss under Rule 12(b)(6) without formally construing the claims"); *Cyberfone Sys., LLC v. CNN Interactive Grp, Inc.*, 558 Fed. Appx. 988, 992 n.1 (Fed. Cir. 2014). Accordingly, the § 101 inquiry is properly raised on a motion to dismiss under Rule 12(b)(6).[3] *Aatrix Software*, 882 F.3d at 1125.

### B.    Patent Eligible Subject Matter.

Patent protection is available for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. This protection, however, is not without limits: the Supreme Court has "long held that this provision contains an important implicit exception[:] Laws of nature, natural phenomena, and abstract

---

[3] Courts routinely grant motions to dismiss for failure to claim patentable subject matter at the pleading stage. See, e.g., *SAP Am., Inc. v. InvestPic LLC*, 890 F.3d 1016, 1023-24 (Fed. Cir. 2018); *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1385-86 (Fed. Cir. 2018); *Maxon, LLC v. Funai Corp., Inc.*, 726 Fed. Appx. 797, 798 (Fed. Cir. 2018); *Two-Way Media Ltd. v. Comcast Cable Commc'ns*, LLC, 874 F.3d 1329, 1341 (Fed. Cir. 2017); *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1328 (Fed. Cir. 2017); *Fair-Warning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1098 (Fed. Cir. 2016); *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1376 (Fed. Cir. 2016); *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 609 (Fed. Cir. 2016); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014).

ideas are not patentable." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S.Ct. 2107, 2116 (2013) (quoting *Mayo*, 132 S. Ct. at 1293). See also, *Alice*, 134 S. Ct. at 2347 (collecting cases). This prevents patentees from monopolizing "the basic tools of scientific and technological work." *Mayo*, 132 S. Ct. at 1292.

"Under the two-part test described by the Supreme Court in *Mayo* and *Alice*, "[w]e must first determine whether the claims at issue are directed to a patent-ineligible concept," here a law of nature or physical phenomenon (force and its direction expressible as the mathematical formula $F = m \cdot a$, force equals mass times acceleration). *Alice*, 134 S.Ct. at 2355. At step one, "the court examines 'the focus of the claimed advance over the prior art' to determine if the character of the claim as a whole, considered in light of the specification, is directed to excluded subject matter." *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1092 (Fed. Cir. 2019) (quoting *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1338 (Fed. Cir. 2017). Also, the "prohibition against patenting [ineligible subject matter] cannot be circumvented by attempting to limit [its] use to a particular technological environment." *Alice*, 134 S.Ct. at 2358; *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018); *Intellectual Ventures I*, 850 F.3d at 1340.

If the claims are directed to excluded subject matter, we must then "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 134 S. Ct. at 2355. This involves the "search for an 'inventive concept' – i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* When, as here, any additional elements beyond the excluded subject matter consist of "well-understood, routine,

4

conventional activit[ies] previously known to the industry," the patent claims are not patent-eligible. *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 773 (2019); *Berkheimer*, 881 F.3d at 1367. Also, any inventive concept provided by additional features beyond the ineligible concept must be "captured" in the subject patent claim. *Berkheimer*, 881 F.3d at 1369-70; *Recognicorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) ("To save a patent at step two, an inventive concept must be evident in the claims.").

## III. ARGUMENT

### A. *Mayo / Alice* Step One: The '643 Patent Claims Are Directed to Excluded Matter.

#### 1. The Claims Claim Force and Its Direction, a Law of Nature.

The '643 Patent independent Claims 1 and 12 are representative of the ineligible subject matter of all its claims:

1. A tug toy comprising:

at least one gripping member and a central portion,
wherein said at least one gripping member is attached to said central portion, and wherein said central portion further includes a noise maker,
wherein said at least one gripping member **is adapted to transmit force to** said central portion and
**wherein said force comprises a first lateral force directed away from** the central portion **in the direction of** a first gripping member.

12. A tug toy capable of being gripped by a pet, said tug toy comprising:

a central portion;
at least one means for gripping said tug toy, attached to said central portion;
means for making noise retained in said central portion; and means for activating said means for making noise,
wherein the at least one means for gripping is located adjacent the central portion such that the means for activating said means for making noise **activates** the means for making noise **when force is applied to the at least one means for gripping along a first plane of said central portion in a direction away from said central portion**.

(emphasis added wherein **bold red** print indicates ineligible subject matter and highlighted print indicates additional features that are "well-understood, routine, conventional activities previously known to the industry")

What all claims of the '643 Patent have in common is that they (1) claim a tug toy by what it *functionally does*, not by what it *is*, (2) are directed to a law of nature, namely force and its direction, and (3) recite, other than the patent ineligible subject matter of force and its direction, additional features which are "well-understood, routine, conventional activities previously known to the industry", namely a "gripping member," a "central portion," and a "noisemaker," directly or as "means for" elements.

But the claimed "force" and its "direction" is known by the history of human experience. The axial force of the asserted tug toy patent claims is largely the physics of tension, a pulling force transmitted axially by the means of a string, cable, chain, or similar one-dimensional continuous object, such as in "tug of war[4]" which goes back to "at least 8th century BC to 5th century BC" to train warriors. See https://en.m.wikipedia.org/wiki/Tug_of_war.

Basic physics teaches force is a push or pull that causes an object to move faster or slower, stop, change direction, or change size or shape. Indeed, without force, nothing would ever move. Force is the cause of motion. All forces have a magnitude (size) and direction. Force is a vector quantity. Force has long been measured. The SI unit of force is the Newton (N). Other units of force include the dyne, kilogram-force (kilopond), poundal, and pound-force. Force cannot be seen but it can be judged by the effects which it produces in various bodies around us. Force is the foundation for classical (Newtonian) mechanics and its branch of dynamics. The state of any object can be changed by applying external force (see Newton's First Law of Motion). Force is used in our everyday actions like pushing, pulling, lifting, stretching, twisting and pressing. Force is a fundamental law of nature, a natural phenomenon expressible as the

---

[4] Tug of war (also known as tug o' war, tug war, rope war, rope pulling, or tugging war) is a sport that pits two teams against each other in a test of strength: teams pull on opposite ends of a rope, with the goal being to bring the rope a certain distance in one direction against the force of the opposing team's pull.

mathematical equation $F = m \cdot a$ (force = mass x acceleration, see Newton's Second Law of Motion). See https://www.brown.edu/Departments/Engineering/Courses/En4/Notes/Forces.pdf.

This court can take judicial notice of the foregoing character of "force" for purposes of this Rule 12(b)(6) motion. *Gen. Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997); *Doherty v. City of Chicago*, 75 F.3d 318, 325 n. 4 (7th Cir. 1996); Fed.R.Evid. 201(b) (judicial notice appropriate when the "fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Force is a universal truth of this world.

### 2. The Claims Are Written to Excluded Subject Matter.

The first step in the *Alice* test is to examine the fundamental concept of the claim and determine whether the claim as a whole is directed to excluded subject matter. *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015) ("Under step one of *Mayo/Alice*, the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter.") "We look to whether the claims in the patent focus on a specific means or method, or are instead directed to a result or effect that itself is the [excluded subject matter] and merely invokes generic processes and machinery." *Two-Way Media Ltd. v. Comcast Cable Communications, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017). While the Court should be careful not to "oversimplify the claims" at this stage of the analysis, *In re TLI Comm'ns LLC*, 823 F.3d 607, 611 (Fed. Cir. 2016), the analysis should not focus on excess verbiage or implementation details, but instead focus on the "concept embodied by the majority of the limitations." *Ultramercial*, 772 F.3d at 715 (Fed. Cir. 2014); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1256 (Fed. Cir. 2016) (examining claim after being "stripped of excess verbiage").

Independent Claims 1 and 12 herein, as written, are directed to a law of nature - force and its direction. All other dependent claims of the '643 Patent involve the same judicial exception to patent eligible subject matter as they are directly or indirectly dependent on representative Claims 1 and 12. Moreover, several of the dependent claims recite further limitations of force such as in dependent Claims 2 ("wherein said central portion is adapted to receive force transmitted from the at least one gripping member and wherein said force activates the noise maker"), 4, 7, and 11 ("wherein said force activates the noisemaker by compression"), and 10 ("wherein said force additionally comprises a second lateral force directed away from the central portion in the direction of the second gripping member"). Claims 12 to 15 fare no better as the Claim 1 features are changed to "means for" elements subject to the same ineligible limitations.

The independent claims define the invention by the "force" of its "adapted to" and "wherein" functionality, and not by structure defining how to achieve the functionality. The language of "a gripping member," a "central portion," and "noise maker"[5] as used in the claims are "nonce" terms.[6] The claims use such sweeping terminology in a nondescript sense for their function devoid of the necessary specifically defined structure to achieve desired results. The same can be said of other structural features of the dependent claims, such as a squeak valve (Claim 3), a retainer (Claim 5, 6), a cover (Claim 8), a second gripping member (Claim 9, 10) or their "means for" recasting (Claim 13 to 15) as all are long-known conventional structure added without recitation of how they relate to or achieve the "adapted to" or "wherein" functionality.

---

[5] The patent application itself admits that "Noise makers, such as squeak toys are known." Mtn. Ex.1, '643 Patent at Col.1, line 26.

[6] The Federal Circuit has held that using nonce words is often "tantamount to using the word 'means' because [these words] 'typically do not connote sufficiently definite structure' and therefore may invoke § 112, para. 6." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1350 (Fed. Cir. 2015) ("distributed learning control module" did not connote a sufficiently definite structure).

At best, the claims of the '643 Patent attempts to limit a law of nature to the particular environment of a tug toy.[7] Other than the ineligible subject matter, the asserted claims merely describe, at a generalized high level, long-known conventional structure of a "gripping member," a "central portion," and a "noisemaker" (or their "means for" recasting) as field of use features rather than defining the necessary particular structure or way to achieve the "adapted to" or "wherein" functionality. *See, e.g., In re TLI Comm'ns LLC*, 823 F.3d at 610-611 (finding claims abstract where "the specification makes clear that the recited physical components merely provide a generic environment in which to carry out the abstract idea"). Limiting the invention to a technological environment – here a tug toy of skeletal conventional features – does "not make an abstract concept any less abstract under step one." *Berkheimer*, 881 F.3d at 1367; *Intellectual Ventures I*, 850 F.3d at 1340.

### B. *Mayo / Alice* Step Two: The '643 Patent Claims Fail to Recite an Inventive Concept Captured by the Claims.

At *Mayo / Alice* step two, a court considers the elements of the claim, both individually and as an ordered combination, to assess whether the additional elements transform the nature of the claim into a patent-eligible application of the judicial exception. *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1347 (Fed. Cir. 2014). To save a patent at step two, an inventive concept must be evident in the claims. *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017). The claim limitations must disclose additional features indicating more than the performance of 'well-understood, routine, [and] conventional activities previously known to the industry." *Content Extraction*, 776 F.3d at 1347-48 (quoting *Alice*, 134 S. Ct. at 2359). It is "well-settled that mere recitation of concrete, tangible

---

[7] The Federal Circuit has repeatedly emphasized the need to focus on the *claimed* subject matter in the patentability analysis. *See, e.g., Berkheimer*, 881 F.3d at 1369-70; *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1321-22 (Fed. Cir. 2016).

components is insufficient to confer patent eligibility to [ ] otherwise [excluded subject matter]" where those components simply perform their "well-understood, routine, conventional" functions. *In re TLI Communications*, 823 F.3d at 611. The limitations must "narrow, confine, or otherwise tie down the claim so that, in practical terms, it does not cover the [ineligible subject matter] itself. *Cyberfone*, 558 Fed. Appx. at 992 (quoting *Accenture Global Servs., GmbH v. Guided Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013)).

### 1.    All Additional Claim Limitations Are Conventional.

The second step of the *Alice* analysis (the search for an "inventive concept") asks whether the claim contains an element or combination of elements that ensures that the patent in practice amounts to significantly more than a patent upon the ineligible subject matter itself. *Alice*, 134 S.Ct. at 2355. This includes consideration of whether claim elements "simply recite 'well-understood, routine, conventional activit[ies].' " *Alice*, 134 S.Ct. at 2359. "Simply appending conventional steps, specified at a high level of generality, [is] not *enough* to supply an inventive concept." *Alice*, 134 S.Ct. at 2357 (internal quotation marks omitted) (emphasis in original).

The '643 Patent fails *Mayo / Alice* step two because the asserted claims merely instruct implementing a law of nature in the environment of a tug toy with all additional claim limitations beyond the law of nature written so broadly as to embrace "well-understood, routine, conventional activity already engaged in by the scientific community." A "gripping member," a "central portion," and a "noisemaker" are nondescript generalized components with a breadth of scope encompassing truly ancient things. The '643 Patent admits "[n]oise makers such as squeak toys are known." Mtn. Ex.1, '643 Patent at Col.1, line 26. The additional claim limitations do not supply an inventive concept.

All dependent claims in the '643 Patent build upon, but do not vary significantly from the tug toy described in independent Claims 1 and 12. All asserted claims of the '643 Patent share a

10

commonality of format in that the "toy" is defined by structurally neutral skeletal claim elements of commonplace ancient components (a "gripping member", a "central portion", and a "noisemaker" or their "means for" re-castings) to accomplish the functions of the defined "adapted to" or "wherein" clauses directed to intangible axial force. Recitals in the dependent claims of a squeak valve (Claim 3), a retainer (Claim 5, 6, 15), a cover (Claim 8), and a second or third gripping member (Claim 9, 10, 13, 14) are also long-known conventional structure that fail to specify how the recited "adapted to" or "wherein" outcomes are accomplished.

The claims do not define how to overcome a technical problem. They introduce no new, unconventional, or improved components. It is significant the patentee did not invent a gripping member, a central portion, or noisemakers. Such items, as well as valves, retainers, covers, and a second or third gripping members are among the "well-known" concepts that "humans have always performed." *Content Extraction*, 776 F.3d at 1347. There is no structure claimed that is unconventional.

The asserted claims at issue here are much more structurally austere than the claiming of ineligible force in a recent case having a more complex mechanical environment. In *American Axle & Manufacturing, Inc. v. Neapco Holdings LLC*, 309 F.Supp.3d 218 (D. Del. 2018), patent claims generally related to shaft assemblies for transmitting rotary power in a driveline (and more particularly to a method for attenuating driveline vibrations transmitted through a shaft assembly) were held to be directed to a patent ineligible law of nature and did not supply inventive concept. The claims were applications of Hooke's law — the linear relationship between force F and displacement x of a spring with stiffness k, specifically F=kx — with the result of friction damping, and the claims failed to instruct how to design the tuned liners or manufacture the driveline system to attenuate vibrations. *Id.* at 225. Rather, the asserted claims

simply instruct one to apply Hooke's law to achieve the desired result of attenuating certain vibration modes and frequencies. They provided no particular means of how to craft the liner and propshaft in order to do so. *Id.* at 228.

In essence, the asserted claims attempt to characterize the physics behind tug of war applied to a noisemaker without recitals "captured" in the claims of how specific structure activates the noisemaker. *Berkheimer*, 881 F.3d at 1369-70. When, as here, additional elements beyond the excluded subject matter consist of "well-understood, routine, conventional activity already engaged in by those in the field," they are insufficient to provide an inventive concept. *Mayo*, 566 U.S. at 82, 132 S.Ct. 1289. See also, *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1378 (Fed. Cir. 2015) ("[A]ppending routine, conventional steps to a natural phenomenon, specified at a high level of generality, is not enough to supply an inventive concept.") "[C]laims, defining a desirable [ ] result and not limited to inventive means of achieving the result, fail under § 101." *Electric Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1351 (Fed. Cir. 2016).

### 2. The Claims Fail to Provide an Inventive Concept as an Ordered Combination.

The asserted claims taken as an "ordered combination" fail to provide an "inventive concept" because they "add nothing significantly beyond the sum of their parts separately." *Mayo*, 566 U.S. at 79-70. As a combination, no problem is solved or technical improvement made. The additional features in sum are no greater than their parts: they define only a desirable outcome of intangible axial force without inventive structure specifying how to achieve the same.

12

### C.   The Claims Are Invalid Under 35 U.S.C. § 112 ¶ 2.

Another independent basis for the present motion to dismiss is all claims of the '643 Patent have undue breadth and are invalid as a matter of law for failing to comply with the "regards as his invention" requirement of 35 U.S.C. § 112 ¶ 2.[8]

35 U.S.C. § 112 ¶ 2 states "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." It contains two requirements: "first, [the claim] must set forth what the applicant regards as his invention and second, it must do so with sufficient particularity and distinctness, i.e., the claim must be sufficiently definite." *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1344 (Fed. Cir. 2002); *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1377 (Fed. Cir. 2000). A determination of whether a claim recites the subject matter which the applicant regards as his invention is a question of law. *Allen Eng'g*, 299 F.3d at 1349.

"A claim is invalid under the first prong of 35 U.S.C. § 112 ¶ 2, when one of skill in the relevant art, reading the specification would not understand the invention set forth in a claim is what the patentee regarded as his invention." *Id.*; see also, *Juxtacomm-Texas Software, LLC v. Axway, Inc.*, No. 6:10-cv-0011, 2012 WL 7637197 at *4 (E.D. Tex. July 5, 2012) aff'd *Juxtacomm-Texas Software, LLC v. Tibco Software, Inc.*, 532 Fed.Appx. 911, 912 (Fed. Cir. 2013). "[T]here must be a showing of a logical inconsistency or contradiction between the claims and the specification." *Id.* at *8.

Here, there is an irreconcilable contradiction between the over-broad claims of the '643 Patent and its specification. Claims 1 to 8 and 12 of the '643 Patent require only one gripping

---

[8] The "regards as his invention" requirement is the sole § 112 issue raised in this motion. All other § 112 issues, such as, for example, "written description," "enablement," and "indefiniteness," are expressly reserved.

member (i.e., "at least one gripping member"). Yet the abstract and 5 column specification of the ‘643 Patent consistently describes the invention in terms of "at least two gripping members" (16 times) or as a "first gripping member" and a "second gripping member" (20 times). See Mtn. Ex. 1, the ‘643 Patent at highlighted portions. All drawing figures, FIG. 1 to 8, show 2 or 3 gripping members. Nowhere does the ‘643 Patent teach a squeak tug toy of only one gripping member. The ‘643 Patent does not disclose that a one gripping member tug toy generates the claimed force and its direction or makes a noise. Indeed, at Col. 3, line 61 to Col. 4, line 4, the inventor expressly and unequivocally teaches otherwise:

> *When the first gripping member 2 and the second gripping member 3 are pulled simultaneously, as shown in FIG. 5, the first strap 6 and the second strap 7 may compress the noise maker 9, which then emits a sound.* The sound may be a high-pitched sound such as a squeak. *After* the first gripping member 2 or the second gripping member 3 is released or brought closing to one another, the noise maker 9 may decompress, inflate with air, and emit a similar high-pitched sound. The operation of compression and decompression of the noise maker 9 may also include the third gripping member 10. (italic emphasis added)

To make sound, there must first be *a simultaneous pulling of two gripping members*. Yet, Claims 1 to 8 and 12 requiring "*at least one* gripping member" do not correspond in scope with what the inventor regards as his invention. There is logical inconsistency or contradiction between the undue breadth of such claims requiring only one gripping member and their specification. *Juxtacomm-Texas Software, 2012 WL 7637197* at *8.

Dependent tug toy Claims 9 to 11 (adding a "second gripping member") still have undue breath contradicting what the inventor regards as his invention because although a second gripping member is introduced there is no recital of *how* the forces recited therein are generated, or *how* "activat[ion of] the noisemaker" is achieved. Also no first strap 6 and second strap 7 are claimed. The invention disclosure as taught by the inventor provides that the forces and its

14

direction and the activation of the noise maker only occur when both first and second gripping members are *pulled simultaneously* for *the two straps to compress the noise maker*. Yet the necessary simultaneous pulling and the straps are not found in Claims 9 to 11. The claims do not correspond in scope to what the inventor regards as his invention because they merely reference the "force" and its direction involved in the tug toy (base Claim 1) and the fact that "said force activates the noise maker" (Claim 2) without specifying *how* the force is generated or *how* activation of the noise maker is accomplished.

Similarly, the tug toy "means for" dependent Claims 13 to 15 ("wherein said at least one means for gripping comprises first and second means for gripping" or first, second and "third means for gripping") suffer the same infirmity of undue breath contradicting what the inventor regards as his invention. Claims 13 to 15 include all limitations of their base Claim 12, which, in part, requires "the means for activating the means for making noise" so "activates…when force is applied to the *at least one means for gripping along a first plane of said central portion away from said central portion*." Yet this excises out the necessary condition that *both* first *and second* "means for gripping" must be *pulled simultaneously* for the straps to accomplish activation of noise.

There is irreconcilable discordance and logical inconsistency between the clear import of inventor's patent disclosure of how forces are generated and how noise activation occurs and the non-corresponding expanded scope of the '643 Patent claims. Accordingly, as a matter of law, all claims of the '643 Patent should be held invalid under the "regards as his invention" requirement of 35 U.S.C. § 112 ¶ 2.

## IV. CONCLUSION

For the foregoing reasons, Pet Factory respectfully requests the Court grant its motion to dismiss the Complaint with prejudice.

15

Dated: July 2, 2019                 Respectfully submitted,

:                                   /s/ *James P. Hanrath*

                                    James P. Hanrath
                                    Michael J. Femal
                                    MUCH SHELIST, P.C.
                                    191 N. Wacker Drive, Suite 1800
                                    Chicago, IL 60606
                                    Telephone: (312) 521-2000
                                    jhanrath@muchshelist.com
                                    mfemal@muchshelist.com

                                    *Counsel for Defendant Pet Factory, Inc.*

16