UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FYF-JB LLC,<br><br>    Plaintiff,<br><br>v.<br><br>PET FACTORY, INC.,<br><br>    Defendant. | No. 19 C 2608<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

FYF-JB, LLC sued Pet Factory, Inc. for allegedly infringing its patent covering a tug toy for animals that emits a sound when it is pulled on both sides. Pet Factory moved to dismiss FYF-JB's complaint, arguing that the asserted claims are not directed to patent-eligible subject matter under 35 U.S.C. § 101, and that the claims are also invalid for failing to comply with the "regards as his invention" requirement of 35 U.S.C. § 112. For the following reasons, Pet Factory's motion is denied.

**Legal Standard**

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." The standard applied to motions under Rule 12(c) is the same standard applied to dismissals under Federal Rule of Civil Procedure 12(b)(6). *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). The complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Civ. P. 8(a)(2). Through this statement, defendants must be provided

1

with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This means the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

**Background**

FYF-JB is the owner of U.S. Patent 9,681,643 (the '643 patent), issued on June 20, 2017. R. 1 ¶ 9. The patent is titled "Tug Toy." *Id.* The '643 patent's "Background of the Invention'" section states as follows:

> The use of toys to entertain animals, particularly pets, have been widely used in the pet supply industry for many different purposes. For example, tug toys keep pets occupied. Tug toys also allow pets to chew on an object when they are "teething," they allow owners to play "fetch" with their pets, and tug toys can also be used to play with and/or train dogs. Noise makers such as squeak toys are known, however, there is currently no tug toy that emits a sound when at least two pets, or a pet and its owner, pull a tug toy. Therefore, what is needed is a tug toy that emits a sound when at least two pets, or a pet and its owner, pull both members of the tug toy.

R. 1-1 col. 1

Claim 1 recites:

A tug toy comprising:

at least one gripping member and a central portion, wherein said at least one gripping member is attached to said central portion, and

wherein said central portion further includes a noise maker,

wherein said at least one gripping member is adapted to transmit force to said central portion and

wherein said force comprises a first lateral force directed away from the central portion in the direction of a first gripping member.

*Id.* col 5.

Claim 12 recites:

> A tug toy capable of being gripped by a pet, said tug toy comprising:
>
> a central portion;
>
> at least one means for gripping said tug toy, attached to said central portion;
>
> means for making noise retained in said central portion; and
>
> means for activating said means for making noise,
>
> wherein the at least one means for gripping is located adjacent the central portion such that the means for activating said means for making noise activates the means for making noise when force is applied to the at least one means for gripping along a first plane of said central portion in a direction away from said central portion.

*Id.* col. 6. The remaining claims depend on either claim 1 or claim 12 and recite additional features of the tug toy. R. 25 at 2.

Plaintiff FYF-JB, through its Jolly Pets division, manufactures and sells a dog toy under the name JOLLY TUG, which is covered by the '643 patent. R. 1 ¶ 10.

Defendant Pet Factory sells dog toy products online, through third-party retail stores, and at trade shows. *Id.* ¶ 11. Among its products, Pet Factory sells "Logical

3

Pet Pull & Squeak" dog toys, which FYF-JB alleges infringes upon the '643 patent. *Id.* ¶ 12. Pet Factory moved to dismiss the complaint, arguing that the asserted claims are patent ineligible.

## Analysis

I. 35 U.S.C. § 101

Whether a claim recites patent-eligible subject matter pursuant to 35 U.S.C. § 101 may be appropriately decided on a Rule 12(b)(6) motion prior to claim construction. *See, e.g., Content Extraction & Transmission, LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (district court properly resolved Rule 12(b)(6) motion based on § 101 prior to claim construction); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714-17 (Fed. Cir. 2014) (same).

Pet Factory argues that the '643 patent claims are invalid because they are directed to the natural law of "force and its direction." R. 22 at 8. FYF-JB responds that the '643 patent claims an article of manufacture that is eligible for patent protection. For the purposes of evaluating patent eligibility, the Court finds that claims 1 and 12 of the '643 patent are representative of the claims at issue, as they are the sole independent claims, and the dependent claims only recite additional structures or features of the tug toy. R. 25 at 2. *See Planet Bingo, LLC v. VKGS LLC*, 576 Fed. Appx. 1005, 1007 (Fed. Cir. 2014) (finding that analysis of the independent claims was sufficient as the dependent claims recited only slight variations of the independent claims).

Section 101 of the Patent Act defines patentable subject matter as "any new or useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. However, the Supreme Court has held that an important implicit exception to Section 101 is that "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Intl*, 573 U.S. 208, 216 (2014) (quoting *Assn for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)). The purpose of this exception is so that "patent law [does] not inhibit further discovery by improperly tying up the future use of these building blocks of human ingenuity." *Id.* (internal quotation marks omitted). At the same time, "all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012). Thus, in applying the Section 101 exception, the Court must distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more, thereby transforming them into patent-eligible inventions. *Alice*, 573 U.S. at 217.

The Supreme Court identified in *Alice* a two-step framework for determining whether claims recite patent-eligible subject matter. The first step is to "determine whether the claims at issue are directed to a patent-ineligible concept." *Id.* at 218. If the claims are directed to a patent-ineligible concept, courts proceed to the second step and "consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of

5

the claim into a patent-eligible application." *Id.* at 217 (internal quotation marks omitted).

A. Step One

Pet Factory argues that the '643 patent claims are directed to the natural phenomenon of "force and its direction," R. 22 at 8, which has been used by humans in activities such as tug-of-war since antiquity. *Id.* at 6. According to Pet Factory, the '643 patent claims at best simply limit the natural law of force to the particular environment of a tug toy. FYF-JB contends that the '643 patent claims are directed to an article of manufacture (a tug toy for pets), which happens to use force for its operation. R. 25 at 7-8. The Court finds that the '643 patent claims are not directed to an abstract idea.

In performing step one of the *Alice* inquiry, courts must "articulate what the claims are directed to with enough specificity to ensure the step one inquiry is meaningful." *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1347 (Fed. Cir. 2017). The '643 patent claims are directed to a tug toy comprising: at least one gripping member; a central portion; and a noise maker designed to emit a sound when one applies force. While the claims use the word "force," it is in the context of operating the tug toy. *See FairWarning IP, LLC v. Iatric Systems, Inc.*, 839 F.3d 1089, 1094 (Fed. Cir. 2016) ("Indeed, even though a claim can be abstracted to the point that it reflects a patent-ineligible concept . . . that claim may nevertheless be patent eligible if the claim language is directed to a patent-eligible *application* of that concept.").

6

Pet Factory asks the Court to ignore the tangible components included in the '643 patent because they are "well-understood, routine, and conventional." R. 22 at 6, 8-9. And when one does so, Pet Factory asserts, force and its direction are the only elements remaining. But this runs contrary to the mandate that "claims must be considered as a whole" when determining the eligibility of patent protection under § 101. *Diamond v. Diehr*, 450 U.S. 175, 188 (1981). Moreover, the "well-understood, routine, and conventional" language that Pet Factory cites comes from *Alice* and *Mayo* in the context of describing under step two of the *Alice* test why the addition of routine steps does not transform an otherwise unpatentable method into a patent-eligible application. *Mayo*, 566 U.S. at 79; *Alice*, 573 U.S. at 225; *see also In re TLI Communications LLC Patent Program*, 823 F.3d 607, 613 (Fed. Cir. 2016) (explaining that at step two of the *Alice* test "the mere recitation of concrete, tangible components is insufficient to confer patent eligibility *to an otherwise abstract idea*") (emphasis added). This is distinct from arguing that the tug toy's hardware components are well-understood, routine, and conventional at step one. *See Baxter Int'l, Inc. v. Carefusion Corp.*, 2016 WL 2770787, at *9 (N.D. Ill. May 13, 2016). Pet Factory's argument would be more appropriate as a question of whether the '643 patent claims are novel in light of prior art. *See id.* at *10; *see also Diehr*, 450 U.S. at 190 ("The question therefore of whether a particular invention is novel is 'wholly apart from whether the invention falls into a category of statutory subject matter.'") (citation omitted). Here, FYF-JB's claims are anchored to the tangible form of a tug toy, thus rendering it patent eligible. *See Carefusion*, 2016 WL 2770787, at *10; *contra Versata Dev. Grp., Inc. v. SAP Am.,*

7

*Inc.*, 793 F.3d 1306, 1333 (Fed. Cir. 2015) (describing that abstract ideas have "no particular concrete or tangible form or application"). And while Pet Factory correctly notes that reciting concrete, tangible components is not necessarily enough to escape the reach of *Alice* step one, R. 26 at 3, every case Pet Factory cites for this proposition deals with method and system claims. *See id.*; *In re TLI Communications*, 823 F.3d 607 at 609 (method and system for taking, transmitting, and organizing digital images); *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1283 (Fed. Cir. 2018) (systems and methods for indexing information); *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1317 (Fed. Cir. 2016) (systems and methods for assisting borrowers to obtain loans); *Content Extraction*, 776 F.3d at 1344 (method for collecting and storing data).

Moreover, comparing the '643 patent claims to other claims already found to be abstract further supports that they are directed to patent-eligible subject matter. "The Supreme Court has not established a definitive rule to determine what constitutes an 'abstract idea' sufficient to satisfy the first step of the *Mayo/Alice* inquiry. Rather, both [the Federal Circuit] and the Supreme Court have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).

Pet Factory does not point the Court to one decision in which an analogous article of manufacture was found abstract at step one of the *Alice* inquiry. For its part, FYF-JB directs the Court to *Quality Innovative Products, LLC v. Brand 44,*

8

*LLC*, 2018 WL 4829647, at *5-7 (D. Colo. 2018). In that case, the patents at issue concerned a circular swing that could move in any direction. The defendant argued that the swings were "nothing more than a millennia old application of a pendulum— a natural phenomenon that cannot be patented." *Id.* at *3 (internal quotation marks omitted). In rejecting that argument, the court emphasized that the inquiry "cannot simply ask whether the claims *involve* a patent-ineligible concept, because essentially every routinely patent-eligible claim involving physical products and actions *involves* a law of nature and/or natural phenomenon." *Id.* at *5 (quoting *Enfish*, 822 F.3d at 1335). The court then explained that while the swing patents involved the natural phenomenon of a pendulum, they were directed to articles of manufacture used to improve upon the use of traditional swings. *Id.* at *6.

Similar considerations apply here. For instance, claim 1 recites a tug toy for which the gripping member is *adapted to* transmit force to the central portion. Likewise, claim 12 recites that the noise maker activates "when forced is applied." The claims thus involve force but are not directed to force itself. *See Mkt. Track, LLC v. Efficient Collaborative Retail Mktg., LLC*, 2015 WL 3637740, at *3 (N.D. Ill. June 12, 2015) (citing *Mayo*, 566 U.S. at 85, and explaining that while Samuel Morse could not patent the use of electromagnetic force to send characters or letters because that would improperly tie up the future use of laws of nature, he could patent his telegraph, including the device itself and its specific process for manipulating the unpatentable electromagnetic force, because it qualified as a patent-eligible application of the natural law).

9

The court in *Quality Innovative Products* cited the "teeter-totter" example from Section 2106.04 of the Manual for Patent Examining Procedure to support its analysis. That example draws the following distinction:

> [A] claim that recites a judicial exception is "A machine comprising elements that operate in accordance with F=ma." This claim recites the principle that force equals mass times acceleration (F=ma) and is therefore directed to a law of nature exception. Because F=ma represents a mathematical formula, the claim could alternatively be considered as directed to an abstract idea. Because this claim is directed to a judicial exception [ ], it requires further analysis [under step two of the *Alice/Mayo* test]. An example of a claim that merely *involves, or is based on*, an exception is a claim to "A teeter-totter comprising an elongated member pivotably attached to a base member, having seats and handles attached at opposing sides of the elongated member." This claim is based on the concept of a lever pivoting on a fulcrum, which involves the natural principles of mechanical advantage and the law of the lever. However, this claim does not recite these natural principles and therefore is not directed to a judicial exception [ ]. Thus, the claim is eligible without further analysis.

R. 26 at 7. Pet Factory argues that as with the machine that operates in accordance with F=ma, the '643 patent claims are defined by features that operate in accordance with force and its direction. But unlike the F=ma machine, the '643 claims do not merely state that the tug toy operates in accordance with using force; rather, they describe the features of the tug toy, and how the apparatus is designed to transmit force and activate the noise maker. In this way, it is more like the teeter-totter because the claims are directed to mechanical components that operate based on the principles of force. And, when considered as a whole, simply using the word "force" does not transform the claims into being directed to a law of nature.

Nor do the '643 patent claims resemble other claims found to be ineligible under Section 101. *See, e.g., Gottschalk v. Benson*, 409 U.S. 63, 71-72 (1972)

10

(algorithm for converting binary-coded decimal numerals into pure binary form patent-ineligible); *Parker v. Flook*, 437 U.S. 584, 594-95 (1978) (mathematical formula for computing alarm limits in a catalytic conversion process patent-ineligible); *Bilski v. Kappos*, 561 U.S. 593, 611-12 (2010) (concept of risk hedging patent-ineligible); *Alice*, 573 U.S. at 225 (abstract idea of intermediated settlement patent-ineligible); *Content Extraction*, 776 F.3d at 1347 (collection, storage, and recognition of data patent-ineligible); *Enfish*, 822 F.3d at 1335 (fundamental economic and conventional business practices often found to be abstract ideas). In contrast to these cases, the '643 patent claims are directed to a tug toy with specific structural components, which when read in the context of the specification are explained as an improvement over previous animal tug toys. The claims thus satisfy the requirements of Section 101.

B. Step Two

Because the '643 patent claims are not directed to a patent-ineligible concept under 35 U.S.C. § 101, the Court need not determine whether the additional elements transform the nature of the claim into a patent-eligible application under step two of the *Alice* inquiry. *Enfish*, 822 F.3d at 1339 ("Because the claims are not directed to an abstract idea under step one of the *Alice* analysis, we do not need to proceed to step two of that analysis."); *see also Xoran Techs. LLC v. Planmeca USA, Inc.*, 2018 WL 2320944, at *6 (May 22, 2018) (stopping at step one of the *Alice* analysis); *Quality Innovative Products*, 2018 WL 4829647, at *7 (same).

II. 35 U.S.C. § 112

11

Pet Factory next argues that the '643 patent claims are invalid under the "regards as his invention" requirement of 35 U.S.C. § 112 ¶ 2.[1] The relevant statutory language states that the "specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112 ¶ 2 (amended 2012). This language has been interpreted to contain two requirements: "first, [the claim] must set forth what 'the applicant regards as his invention,' and second, it must do so with sufficient particularity and distinctness, i.e., the claim must be sufficiently 'definite.'" *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1348 (Fed. Cir. 2002) (alteration in original) (quoting *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1377 (Fed. Cir. 2000)). In determining whether the claim is sufficiently definite, courts analyze whether "one skilled in the art would understand the bounds of the claim when read in light of the specification." *Id.* (quoting *Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 705 (Fed. Cir. 1998)). Claims as granted are accompanied by a presumption of validity based on compliance with § 112 ¶ 2. *S3 Inc. v. NVIDIA Corp.*, 259 F.3d 1364, 1367 (Fed. Cir. 2001). Therefore, a party challenging validity must do so by clear and convincing evidence. *Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369, 1376 (Fed. Cir. 2001).

---

[1] 35 U.S.C. § 112 was amended pursuant to the America Invents Act (AIA) for patent applications filed on or after September 16, 2012. The parties agree that because the '643 patent was filed prior to this date, the pre-AIA version of 35 U.S.C. § 112 controls. As such, all references to 35 U.S.C. § 112 will be to the pre-AIA version.

Pet Factory contends that the '643 patent claims are inconsistent and thus indefinite and invalid under Section 112 because the specification describes the invention as having "at least two gripping members" that must be pulled to emit a sound, R. 1-1 cols. 1-2, whereas the claims require only "at least one gripping member." *Id.* at col. 5.

In the cases Pet Factory cites to support its position, however, the contradictions were irreconcilable. In *Allen*, the claims limited the pivoting of a gear box only in a plane perpendicular to the biaxial plane, whereas the specification described that the gear box *could not* pivot in a plane perpendicular to the biaxial plane. 299 F.3d at 1349. Likewise, in *Juxtacomm-Texas Software, LLC v. Axway, Inc.*, the claims disclosed that data transformation must occur within the systems interface, whereas the specification did not disclose data transformation occurring within the systems interface. 2012 WL 7637197, at *5 (E.D. Tex. July 5, 2012), *aff'd sub nom. JuxtaComm-Texas Software, LLC v. TIBCO Software, Inc.*, 532 F. App'x 911 (Fed. Cir. 2013). In contrast, as FYF-JB points out, "at least one gripping member" is not necessarily inconsistent with "at least two gripping members." And at this stage, claims are afforded "their broadest possible construction." *Midwest Innovative Prods., LLC v. Kinamor, Inc.*, 2917 WL 2362571, at *4 (N.D. Ill. May 31, 2017) (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1343 n.13 (Fed. Cir. 2012)).

Nevertheless, the Court need not decide the issue at this time. The Federal Circuit has observed that "an analysis under [35 U.S.C.] § 112, ¶ 2 is inextricably

intertwined with claim construction." *Lecat's Ventriloscope v. MT Tool and Manufacturing*, 2017 WL 1362036, at *7 (N.D. Ill. Jan. 6, 2017) (quoting *Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1379 (Fed. Cir. 1999)). For that reason, "[n]umerous district courts have declined to entertain indefiniteness arguments at the pleading stage." *Id.* (collecting cases). Indeed, none of the decisions Pet Factory cites occurred on a motion to dismiss. Pet Factory may raise this argument again at the appropriate stage later in this case.

## Conclusion

For the reasons stated above, the Court denies Pet Factory's motion to dismiss [R. 21].

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: September 24, 2019

14